OPINION OF THE COURT
Charles T. Major, J.
This is initially a motion by defendant Town of Manlius for summary judgment under CPLR 3212, dismissing the complaint on the ground that plaintiffs did not comply with the statutory notice of claim requirements under General Municipal Law §§ 50-e and 50-i. Plaintiffs have cross-moved for permission to serve a late notice of claim under General Municipal Law § 50-e (5).
By affidavit dated March 7, 1996, plaintiff Robert Corona avers that in the summer of 1993, he conferred with the Zoning Inspector for the Town of Manlius, New York, with regard to his concern about the accuracy of certain building plans and/or drawings to be submitted by the builder (Joseph Pollichemi) of his new home. He states that the Town Building Inspector informed him that he had received new plans from the builder, and promised that he would inspect the premises "with a fine tooth comb” to be sure that proper drawings and plans were submitted prior to the issuance of a certificate of occupancy. The Town issued a certificate of occupancy on August 18, 1993, and plaintiff further avers that thereafter he again spoke to the Building Inspector who informed him "I inspected your house better than any house that I have ever inspected.”
Following issuance of the certificate of occupancy, plaintiffs closed on the purchase of their new home. It was thereafter, commencing in the fall of 1993, that they began to notice various alleged construction defects with regard to their house and made several complaints to both defendant Pollichemi and to the Town’s Building Inspector without success. In February of *431 1994, plaintiffs went to the Codes Office of the Town of Manlius to review its file on their home, at which point they saw for the first time that the plans and drawings submitted by defendant Pollichemi, for the certificate of occupancy on their home, were actually plans and drawings for another house. Moreover, they discovered for the first time that the Town’s Building Inspector had never actually inspected their house prior to issuing the certificate of occupancy. At this time, the Town of Manlius’ Building Inspector is alleged to have said, "Holy sh**, he did it to me again!”
The Inspector is alleged to have further admitted that he indeed did not compare the drawings or plans submitted for the certificate of occupancy with the house that was actually constructed, and indeed, had never made a physical inspection of the premises. Finally, plaintiffs learned that the drawings and plans which had been submitted to the Town contained a forged architect’s signature allegedly supplied by defendant Pollichemi.
Thereafter, plaintiffs consulted an attorney who informed them that he would file a notice of claim against the Town of Manlius. A notice of claim was filed against the Town of Manlius, which was received on April 11, 1994. Thereafter the instant action was commenced on June 16, 1994.
The Town answered alleging, inter alla, an affirmative defense that plaintiffs had failed to comply with the timely notice requirements of General Municipal Law § 50-e. The Town’s instant motion is one to dismiss for failure to comply with such provision, and Town Law § 67 and General Municipal Law § 50-i. In this regard, the Town contends that plaintiffs should have filed the notice of claim within 90 days of the original issuance of the certificate of occupancy, i.e., not later than November of 1993, which they did not do.
Plaintiffs have cross-moved to serve a late notice of claim pursuant to General Municipal Law § 50-e (5), initially contending that their lawsuit was commenced less than one year after issuance of the certificate of occupancy and was served on the Town within one year and 90 days of the time the certificate of occupancy was issued. As an excuse for any potential late filing, plaintiffs assert that, prior to realizing that there might be structural defects in the construction of their home, they had no reason to inspect the Town’s records, and cite the outright misrepresentation and nonfeasance of the Building Inspector.
Moreover, plaintiffs assert that there was no other way plaintiffs could reasonably have been expected to have *432 discovered that the drawings and/or plans submitted by the builder to obtain the certificate of occupancy were forged and fraudulent. They further contend that they could not have known that, in spite of his assurances, the Town’s Building Inspector would fail to inspect plaintiffs’ premises at all prior to issuing the certificate of occupancy. In this regard, plaintiffs contend that the Town could not be prejudiced by any such late notice of claim, inasmuch as the Town knew, or should have known, through the actions or nonactions of its Building Inspector, of the problems associated with the building of this home.
In response to plaintiffs’ cross motion to serve the amended notice of claim, the Town has continued to rely merely upon provisions of General Municipal Law which indicate that no application for an extension to file a late notice of claim under General Municipal Law § 50-e may be considered if made more than one year and 90 days after the cause of action accrued, unless the statute has been tolled (see, General Municipal Law § 50-i [1]; Pierson v City of New York, 56 NY2d 950, 954).
Finally, it is noted, that on this motion, the Town has not challenged plaintiffs’ recitations as to their conversations with, or conduct of, the Town’s Building Inspector, and further events referred to therein. No affidavit contradicting these allegations has been submitted by the Town.
General Municipal Law § 50-i (1) requires that an action against a municipality must be commenced within one year and 90 days, not from the accrual of the cause of action, but rather from the "happening of the event upon which the claim is based.” In circumstances such as these, the "event” is deemed to be the date of the issuance of the certificate of occupancy, i.e., in this case August 18, 1993 (see, Klein v City of Yonkers, 73 AD2d 931, affd 53 NY2d 1011).
Thus it is clear that plaintiffs’ complaint in this matter was, on its face, timely under General Municipal Law § 50-i. However, a timely filing of the original notice of claim pursuant to General Municipal Law § 50-e was a condition precedent to plaintiffs’ commencement of the action to begin with (see, Ippolito v City of Buffalo, 195 AD2d 983 [4th Dept 1993]). Under the law it makes no difference that plaintiffs, without court leave, had served the notice of claim within the period of limitations. (See, Armstrong v New York Convention Ctr. Operating Corp., 203 AD2d 170 [1st Dept 1994].)
The initial hurdle that plaintiffs must cross is whether or not they are outright barred under the Statute of Limitations *433 cited, notwithstanding the current application to serve a late notice of claim. Moreover, it must be determined whether or not the defendant Town may even be held liable at all for the issuance of a certificate of occupancy under circumstances as presented herein.
Considering the latter issue first, it has been held that with respect to members of the general public, no liability attaches for a " 'violation of a general duty owed by the town to the public at large’ ”, and that the issuance of a certificate of occupancy is a governmental function for which a municipality generally may not be held responsible for damages (Okie v Village of Hamburg, 196 AD2d 228, 231 [4th Dept 1994], and cases cited therein). As was stated by the Court in Okie (supra) "[t]he only exception to that general prohibition is when a special relationship exists between a municipality and the applicant (supra, at 231-232).
In this regard, the Court of Appeals has held that " '[s]uch a duty is found when a special relationship exists between the municipality and an individual or class of persons, warranting the imposition of a duty to use reasonable care for those persons’ benefit’ [such as] 'where the municipality has violated a duty commanded by a statute enacted for the special benefit of particular persons * * * where the municipality has voluntarily assumed a duty, the proper exercise of which was justifiably relied upon by persons benefited thereby * * * or where it assumes positive direction and control under circumstances in which a known, blatant and dangerous safety violation exists’ ” (Okie v Village of Hamburg, supra, at 232 [citations omitted], citing Garrett v Holiday Inns, 58 NY2d 253, 261-262).
In the opinion of this court, and in considering the undisputed allegations made by plaintiffs, it is found that a special relationship existed between the Town of Manlius through its Building Inspector and plaintiffs. In this regard, it is noted that these are not the typical allegations of "negligence” in a case such as this, but may be more properly categorized as misfeasance and/or nonfeasance on the part of the Town Building Inspector such as would also constitute outright fraud in these circumstances.
In Garrett v Holiday Inns (supra), the Court found that the municipality was aware of "known, blatant and dangerous * * * violation^]” on the premises, but apparently certified the premises as safe — a representation upon which the prospective purchaser justifiably relied. Here, much more is alleged in that the Town knowingly abdicated its responsibilities *434 to conduct inspections necessary for a certificate of occupancy such as would have proved beneficial not only to the prospective plaintiff purchaser, but to the surrounding neighborhood and community at large. Moreover, having abdicated such responsibility, the Town, through its Building Inspector, affirmatively and fraudulently certified the premises as in compliance with the appropriate codes, and as safe and free of any violations without having made the inspection at all!
Thus, in the opinion of this court, the Town of Manlius has failed to assume its proper duty of direction and control of its building inspections/certificate of occupancy by knowingly deciding not to enforce, inspect and evaluate the premises, and by knowingly issuing a certificate of occupancy certifying that it had so done. This is not only egregious conduct directed against the citizens of the Town, but more specifically, in the circumstances of this case, against plaintiffs, who were specifically promised to receive an inspection "with a fine tooth comb”, and then told by the Building Inspector that their house was inspected "better than any house that I have ever inspected”.
Having found that a special relationship existed between plaintiffs and the Town of Manlius, such as would impose liability on the Town of Manlius, the next question is whether or not, as implicitly argued by plaintiffs, the Town should be estopped from relying upon the applicable Statute of Limitations to bar their action. In this regard, a defendant may be estopped from asserting the Statute of Limitations if the defendant has engaged in fraud, deception or misrepresentation (see, Simcuski v Saeli, 44 NY2d 442, 449; Okie v Village of Hamburg, supra, at 231). Here estoppel is especially warranted, given plaintiffs’ uncontradicted allegations concerning the course of conduct by the Town’s Building Inspector and their due diligence in commencing this action (cf., Roscigno v Town of Mount Kisco, 210 AD2d 573 [3d Dept 1994]).
Accordingly, defendant Town of Manlius’ motion to dismiss plaintiffs’ complaint based upon the Statute of Limitations contained in the General Municipal Law is denied.
Alternatively, the court grants the cross motion by plaintiffs to file a late notice of claim. Clearly the circumstances herein indicate that the delay was caused by the Town’s own affirmative acts, misrepresentations and/or omissions, and it was, or *435 should have been, on notice as to the acts or omissions of its own Building Inspector and cannot be said to have suffered prejudice thereby.